**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

TROY POWELL,                          :
                                      :    Civil Action No. 09-3727 (JLL)
            Petitioner,               :
                                      :
      v.                              :    **OPINION**
                                      :
MICHELLE RICCI, et al.,               :
                                      :
            Respondents.              :


**APPEARANCES:**

Petitioner pro se              Counsel for Respondents
Troy Powell                    James F. Smith
426548/SBI726112-B             Atlantic County Prosecutor's Office
New Jersey State Prison        4997 Unami Boulevard
P.O. Box 861                   P.O. Box 2002
Trenton, NJ 08625              Mays Landing, NJ 08330


**LINARES,** District Judge

      Petitioner Troy Powell, a prisoner currently confined at New Jersey State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Michelle Ricci and Anne Milgram.

      For the reasons stated herein, the Petition must be denied.

I.  BACKGROUND

A.  Factual Background

      The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

--------------------------------

      [1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a

The facts, according to evidence presented to the jury, are as follows.  On May 14, 2000, Ernest Howard went with a friend, Indira Edwards, to a house that he owned in Atlantic City in order to pay contractors who were working there. After paying the workmen, he returned to his sport utility vehicle, in which Edwards had remained.  Before he got into the vehicle, two men approached on bicycles, each armed with a gun, and demanded that Howard give them money and jewelry. Howard then jumped into the truck through the passenger's side door, climbing over Edwards in order to do so.  One of the robbers got into the back seat and held his gun toward Howard's head while the other remained outside of the vehicle at the passenger's side door.  Howard turned to give his jewelry to the man in the back seat and at the same time grabbed for his gun.  As he did so, the other robber leaned in the front passenger window, over Edwards, and shot Howard in the leg.  The two assailants then fled the scene.

After being shot in the leg, Howard got out of the vehicle, and went back into the house, where the workmen began helping him down the street to his father's delicatessen. At about the same time, Detective Henry Davis, an off-duty Atlantic City police officer, was in the house next door to Howard's visiting his mother.  He had looked out of the window and had seen two males riding bicycles who were suspicious to him because they were dressed too warmly for mild weather.  Shortly after seeing them, he heard a shot and then saw one of the two heading away from the scene, on foot, and carrying a handgun.  He telephoned the police and then went outside, where he encountered Howard, who told him "Troy Powell shot me, and I'm concerned about my keys, my car keys, and my house keys."

Howard then continued on to his father's place of business and from there he was driven to the hospital.  At the hospital, investigators questioned Howard.  He told them that he had been shot by Troy Powell and he provided a description of Powell's clothing and the bicycle he was riding.  He later identified a photograph of defendant as well.  Howard was unable to identify the other assailant, except that he told police that the other man had been

_____

person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

wearing a gray sweatshirt and jeans and that he was armed
with a chrome automatic handgun.

Officers arrived on the scene and began to look for the two
assailants.  They apprehended one Ashley Powell, who was
riding on a bicycle in the area and wearing a light-colored
sweatshirt with a hood.  He was not carrying a weapon.  They
took him to the hospital where Howard looked at him and told
the police that he was not one of the robbers.  The police
then tried unsuccessfully to lift fingerprints from the
bicycle that had been left at the scene and from the cell
phone that Howard had dropped when he got out of the
vehicle.  A .38 caliber bullet was recovered from Howard's
ankle at the hospital.

Subsequently, Troy Powell was apprehended.  Several weeks
later, while he was in jail, Powell told a fellow inmate,
Anthony Thompson, that he had shot Howard in the leg while
Howard was seated and that his defense would be that Howard
had inflicted the gunshot wound on himself.  In addition,
shortly before his trial, Powell recognized Howard, who was
on cleaning duty at the jail, and asked him, "Court's coming
up.  What are you going to do?"

Prior to trial, Powell moved to proceed pro se.  He was
examined on the record by the trial judge and his
application to represent himself was granted, subject to the
condition that he consult with counsel who had been assigned
to represent him.

(Opinion of Appellate Division at 3-5 (December 17, 2003).)

B.  Procedural History

    Troy Powell was tried by a jury and found guilty of two

counts of first-degree robbery, N.J.S.A. 2C:15-1; two counts of

second-degree possession of a weapon for unlawful purpose,

N.J.S.A. 2C:39-4a; two counts of third-degree unlawful possession

of a weapon, N.J.S.A. 2C:39-5b; one count of third-degree

aggravated assault, N.J.S.A. 2C:12-1b(2); one count of fourth-

degree aggravated assault, N.J.S.A. 2C:12-1b(4); and one count of second-degree conspiracy, N.J.S.A. 2C:5-2.

After the verdict was entered, the trial judge granted a motion by the State for an extended term sentence and Powell was sentenced to an aggregate term of seventy years with thirty-five years of parole ineligibility.  He appealed that sentence, which was affirmed, and the Supreme Court denied certification.  Powell then filed for post conviction relief (PCR).  The Petition for PCR was denied, and that denial was affirmed.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas

5

court may consider the decisions of inferior federal courts.

Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state

court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v.
Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v.
Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent
standards than more formal pleadings drafted by lawyers.  Estelle
v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S.
519, 520 (1972).  A pro se habeas petition and any supporting
submissions must be construed liberally and with a measure of
tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998);
Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);
United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),
cert. denied, 399 U.S. 912 (1970).

## III.  ANALYSIS

Petitioner asserts the following ground for relief:

Ground One: The Petitioner was deprived of his Sixth
Amendment right to effective assistance of trial counsel and
forced to choose between going to trial with an ineffective
attorney or of representing himself pro se which had thereby
resulted in a waiver of Petitioner's right to counsel that
was not knowingly, intentionally and voluntarily waived,
therefore writ should issue.

Ground Two: The Trial Court's jury instruction on accomplice
liability was erroneous and as a result deprived the
Petitioner of his Fourteenth Amendment right to due process
and to a fair trial.

Ground Three: The Petitioner was deprived of his due process
right to a fair trial as a result of prosecutorial
misconduct by unfair comments which the trial court failed
to take any curative actions to remedy, therefore writ
should issue.

A.   <u>Unexhausted Claims</u>

Respondents contend that Petitioner did not fully exhaust two of the claims listed above.  As to the claim of ineffective assistance of counsel, Petitioner asserted that claim in his petition for PCR, however, in his appeal of the order denying PCR, Petitioner shifted his arguments from claims concerning his trial attorney to claims arguing the ineffective assistance of counsel who represented him in his post-PCR proceedings.  Thus his claims of ineffective assistance of trial counsel were never fully exhausted in the state court system.

The claims regarding alleged erroneous jury instruction also have not been fully exhausted.  While this issue was mentioned in a broader context, it has not yet been fully presented first in state remedies as is required before being brought as a habeas corpus petition.

Even though Petitioner's claims of ineffective assistance of trial counsel and erroneous jury instruction have not been exhausted in the state courts, this Court finds those claims are meritless.  Accordingly, pursuant to 28 U.S.C. § 2254(b)(2), this Court will exercise its discretion to deny these claims on the merits, rather than stay the proceeding or dismiss for failure to exhaust.[2]

─────────────

[2]Although a petition for writ of habeas corpus may not be granted if Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding

1.   <u>Ineffective Assistance of Trial Counsel</u>

Petitioner asserts claims that he was subjected to ineffective assistance of trial counsel because counsel allegedly failed to conduct pre-trial investigation, failed to provide Petitioner with discovery prior to the trial date, and failed to consult with Petitioner regarding strategy of the case.

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to <u>effective</u> assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> at 694. Counsel's errors must have been "so serious as to deprive the

---

Petitioner's failure to exhaust his state court remedies. <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Lambert v. Blackwell</u>, 387 F.3d 210, 260 n.42 (3d Cir. 2004); <u>Lewis v. Pinchak</u>, 348 F.3d 355, 357 (3d Cir. 2003).

defendant of a fair trial, a trial whose result is reliable."
Id. at 687.  "When a defendant challenges a conviction, the
question is whether there is a reasonable probability that,
absent the errors, the factfinder would have had a reasonable
doubt respecting guilt."  Id. at 695.

The performance and prejudice prongs of Strickland may be
addressed in either order, and "[i]f it is easier to dispose of
an ineffectiveness claim on the ground of lack of sufficient
prejudice ... that course should be followed."  Id. at 697.

There is "a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance."
Strickland, 466 U.S. at 689.  As a general matter, strategic
choices made by counsel after a thorough investigation of the
facts and law are "virtually unchallengeable," though strategic
choices "made after less than complete investigation are
reasonable precisely to the extent that reasonable professional
judgments support the limitations on investigation."  Id. at 690-
91.  If counsel has been deficient in any way, however, the
habeas court must determine whether the cumulative effect of
counsel's errors prejudiced the defendant within the meaning of
Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d
Cir. 1996).

As to this issue, the Appellate Court stated:

After considering the record and briefs, we are satisfied
that all of defendant's arguments are without sufficient

10

merit to warrant discussion in a written opinion, R. 2:11-
3(e)(2), and we affirm substantially for the reasons
expressed by Judge Donio in his decisions denying the
petition and defendant's motion for reconsideration.

Nonetheless, we add the following brief comments.

Although defendant's attorney should have briefed and argued
the point as raised by defendant, there was no prejudice
since the judge carefully considered and rejected the claim.
We add that our own review of the trial transcript reveals
that the judge was painstakingly careful and thorough during
the hearing on defendant's request to waive counsel.
Furthermore, this issue should have been raised and resolved
on appeal.  However, again, there is no prejudice because
the arguments fail to demonstrate any error whatsoever.

(Opinion of Appellate Division at 3 (March 28, 2008).)

This Court agrees with the Appellate decision and finds that

trial counsel's performance did not fall below and objective

standard of reasonable professional assistance such that the

outcome would have been otherwise different but for counsel's

alleged errors.  Petitioner is not entitled to relief on this

claim.

2.   Erroneous Jury Instruction

Petitioner asserts a claim that the trial court instructions

were deficient as to accomplice liability.

Generally, a jury instruction that is inconsistent with

state law does not merit federal habeas relief.  Where a federal

habeas petitioner challenges jury instructions given in a state

criminal proceeding,

[t]he only question for us is "whether the ailing
instruction by itself so infected the entire trial that
the resulting conviction violates due process."  It is

11

> well established that the instruction "may not be
> judged in artificial isolation," but must be considered
> in the context of the instructions as a whole and the
> trial record.  In addition, in reviewing an ambiguous
> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the
> Constitution.  And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly."  "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re

Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause

protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the

crime with which he is charged"); Sandstrom v. Montana, 442 U.S.

510, 523 (1979) (jury instructions that suggest a jury may

convict without proving each element of a crime beyond a

reasonable doubt violate the constitutional rights of the

accused).

Where such a constitutional error has occurred, it generally

is subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d

at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999).

"[I]f the [federal habeas] court concludes from the record that

12

the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

Here, the Appellate Division rejected Petitioner's challenges to the jury instructions.

> The criticism of the charge on accomplice liability should also have been presented on appeal, had it any merit.  But it has no merit.  Contrary to defendant's assertion the charge clearly required an acquittal unless defendant himself acted with the appropriate state of mind.

(Opinion of Appellate Division at 3-4 (March 28, 2008).)

Here, the state courts have determined that the challenged jury instructions correctly conveyed the governing state law principles to the jury.  Nothing in the challenged instructions operated to lift the government's burden of proof on an essential element of the charged crimes.  No "substantial and injurious effect" exists; thus, Petitioner is not entitled to relief on this claim.

13

B.   <u>Prosecutorial Misconduct</u>

Petitioner alleges that he was deprived of his constitutional right to a fair trial because of the prosecutor's remarks during the closing statement.[3]

On direct appeal, the Appellate Division rejected Petitioner's claims of prosecutorial misconduct.

> Defendant did not object when the statement was made and the trial judge did not sua sponte instruct the jury concerning this aspect of the summation.  The next day, Powell moved for a mistrial on the ground that the reference to the "mini-terrorist act" deprived him of a fair trial, "given the climate of the incidents going on as far as the anthrax and all that..."  The trial judge, noting the defendant, an African-American, was not a member of any ethnic group implicated in either the World Trade Center attacks or any other then-recent terrorist activity, denied the mistrial motion.  Noting that even if Powell were of the relevant ethnic heritage, the appropriate remedy would have been a curative instruction rather than a mistrial, the judge then inquired of Powell several times whether he wanted the jury to be given a curative instruction.  Powell repeatedly responded that he wanted a mistrial, rejecting the suggested instruction each time.

---

[3]The section of the prosecutor's statement in closing argument that Petitioner objects to is as follows:
> The victim in this case, I suggest, ladies and gentlemen, was lucky.  Lucky in that when the bullet went into his leg it didn't hit the artery, it didn't hit bone.  The injuries could have been more severe, could have been life threatening.  They were not.  But that doesn't make this a non-serious offense.  This is a little mini-terrorist act.  Pales in comparison with the kinds of things America has been dealing with lately.  Nothing similar to what we've been dealing with.  But it's a little moment of horror that Ernest Howard had to go through, and he shouldn't have had to.  He was minding his own business.

(Opinion of Appellate Division at 6-7 (December 17, 2003).)

In this context, Powell's argument on appeal that the judge committed plain error by failing to give the curative instruction in spite of Powell's refusal to even consider that relief is without merit.  First, under the circumstances, we see nothing in the comment that was "clearly and unmistakably improper" so as to have substantially prejudiced Powell's fundamental right to a fair trial, State v. Timmendequas, 161 N.J. 515, 575 (1999), cert. denied, 534 U.S. 858, 122 S.Ct. 136, 151 L.Ed. 2d 89 (2001), and nothing so egregious that the defendant was deprived of a fair trial, State v. Ramseur, 106 N.J. 123, 322 (1987), cert. denied, 508 U.S. 947, 113 S.Ct. 2433, 124 L.Ed. 2d 653 (1993).  Considering the prosecutor's summation as a whole, the remark was an isolated one not capable, given the overwhelming evidence of Powell's guilt, of depriving him of a fair trial.

(Opinion of Appellate Division at 7-8 December 17, 2003).)

The U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

He may prosecute with earnestness and vigor – indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ...  Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone.  Prosecutors sometime breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence."  United States v. Young, 470 U.S. 1, 7 (1985).

15

> The prosecutor's vouching for the credibility of
> witnesses and expressing his personal opinion
> concerning the guilt of the accused pose two dangers:
> such comments can convey the impression that evidence
> not presented to the jury, but known to the prosecutor,
> supports the charges against the defendant and can thus
> jeopardize the defendant's right to be tried solely on
> the basis of the evidence presented to the jury; and
> the prosecutor's opinion carries with it the imprimatur
> of the Government and may induce the jury to trust the
> Government's judgment rather than its own view of the
> evidence.

Id. at 18.

Under U.S. Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel. Darden, 477 U.S. at 181-82.  Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, this Court agrees with the Appellate Division that it is clear that the prosecutor's behavior did not deprive

16

Petitioner of a fair trial.  Petitioner was not denied due process and as such is not entitled to relief.

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

V.  <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.

<u>/s/ Jose L. Linares</u>
Jose L. Linares
United States District Judge

Dated: September 2, 2010

17